**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **DEBORAH S. FITZPATRICK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:04-0159** |
| | ) | |
| **JO ANNE BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security

denying Plaintiff's Application for disability insurance benefits (DIB) under Title II of the Social

Security Act, 42 U.S.C. §§ 401 - 433. This case is presently pending before the Court on Plaintiff's

Motion for Judgment on the Pleadings filed on August 18, 2004 (Document No. 8.), and Defendant's

Motion for Judgment on the Pleadings filed on September 20, 2004 (Document No. 10.). Both

parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Debra S. Fitzpatrick (hereinafter referred to as "Claimant"), initially filed an

Application for DIB on January 2, 2002, alleging disability as of May 15, 1997, due to lower back

pain and seizures. (Tr. at 69 - 71, 89.) The claim was denied initially and upon reconsideration.  (Tr.

at 41 - 44, 47 - 48.)  On October 17, 2002, Claimant requested a hearing before an ALJ (Tr. at 49 -

50.), and the hearing was held on June 4, 2003, before the Honorable John Murcock.  (Tr. at 296 -

343.) By Decision dated July 17, 2003, ALJ Murdock determined that Claimant was not entitled to

benefits.  (Tr. at 18 - 26.)  Claimant requested review of the ALJ's Decision (Tr. at 14.), and the

ALJ's decision became the final decision of the Commissioner on January 2, 2004, when the

Appeals Council denied Claimant's request for review. (Tr. at 7 - 10.) On February 25, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (1999). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and

claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (1999).   The

Commissioner must show two things: (1) that the claimant, considering claimant's age, education,

work experience, skills and physical shortcomings, has the capacity to perform an alternative job,

and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d

572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must

follow a special technique at every level in the administrative review process." 20 C.F.R. §§

404.1520a(a) and 416.920a(a).[1] First, the SSA evaluates the claimant's pertinent symptoms, signs

and laboratory findings to determine whether the claimant has a medically determinable mental

impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the

impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those

sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations
> is a complex and highly individualized process that requires us to consider multiple
> issues and all relevant evidence to obtain a longitudinal picture of your overall
> degree of functional limitation. We will consider all relevant and available clinical
> signs and laboratory findings, the effects of your symptoms, and how your
> functioning may be affected by factors including, but not limited to, chronic mental
> disorders, structured settings, medication and other treatment.
>      (2) We will rate the degree of your functional limitation based on the extent
> to which your impairment(s) interferes with your ability to function independently,
> appropriately, effectively, and on a sustained basis. Thus, we will consider such
> factors as the quality and level of your overall functional performance, any episodic
> limitations, the amount of supervision or assistance you require, and the settings in
> which you are able to function. See 12.00C through 12.00H of the Listing of
> Impairments in appendix 1 to this subpart for more information about the factors we

---

[1] These Regulations were substantially revised effective September 20, 2000. *See* 65
Federal Register 50746, 50774 (August 21, 2000).

consider when we rate the degree of your functional limitation.

        (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

        (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

        At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The

decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date of disability. (Tr. at 25, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from low back impairment, seizures and fibromyalgia which he deemed severe impairments. (Tr. at 19.) The ALJ found that Claimant did not have a severe mental impairment and her hypertension, gynecological problems and irritable bowel syndrome were non-severe. (Tr. at 21.) Respecting Claimant's mental impairment, the ALJ found that Claimant had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace. (Id.)[2] At the third inquiry, the ALJ concluded that Claimant's medically determinable impairments did not meet or medically equal the level of severity of any listing in Appendix 1. (Tr. at 25, Findings No. 4.) The ALJ stated that "[t]he claimant retains the ability to perform sedentary work with an unlimited sit/stand option. She can occasionally balance, stoop, kneel and crouch, but she can never climb ropes, ladders or scaffolding or crawl. She cannot have exposure to extreme cold, vibration or hazards such as machines or heights." (Tr. at 26, Finding No.. 7.) The ALJ found that Claimant could not perform any of her past relevant work. (Tr. at 26, Finding

---

[2] The ALJ found that Claimant did not have a severe mental impairment. (Tr. at 21.) Claimant does not dispute this finding. The Court nevertheless notes that the ALJ analyzed the evidence respecting her mental disorders in conformity with the special technique as required. (Id.)

5

No. 8.) Nevertheless, the ALJ concluded that Claimant had the residual functional capacity to perform a significant range of sedentary work including work as a surveillance system monitor, utility dispatcher and gate guard, jobs which existed in significant numbers in the regional and national economy. (Tr. at 26, Finding Nos. 12 and 13.) On this basis, benefits were denied.  (Tr. at 26.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence.  Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner in this case is in conformity with all applicable legal standards and supported by substantial evidence.

Claimant's Background

Claimant was born on August 1, 1962, and was 40 years old at the time of the administrative hearing, June 4, 2003.  (Tr. at 69, 300.)  Claimant finished the 10th grade in school and obtained a

GED in 1980.  (Tr. at 95, 300 - 301.)  She indicated in applying for benefits that she completed a computer/typing class in 1995/1996. (Tr. at 95.) In the past, she worked as a ticketer at a department store.  (Tr. at 90, 301 - 303.)

The Medical Record

The Court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

Claimant's Challenges to the Commissioner's Decision and the Commissioner's Response

Claimant states that "[t]he Administrative Law Judge failed to properly evaluate the plaintiff's chronic pain and its effect upon her residual functional capacity for work on a sustained basis." (Document No. 9, p. 4.) Claimant further asserts that "[t]he Administrative Law Judge erred in rejecting the plaintiff's allegations of severe and debilitating pain attributable to fibromyalgia. The Appeals Council gave no consideration to the transcript of the deposition of Dr. Carl Shelton. Dr. Shelton has been the treating physician for the plaintiff since 1997 and his opinion should be entitled to great weight. Clearly, the Appeals Council erred in giving no consideration to the testimony of the treating physician. The Decision and Order of the Administrative Law Judge dated July 17, 2003 finding the plaintiff able to perform sedentary work and not disabled is not supported by the substantial evidence of record and must be reversed as a matter of law." (Id., p. 16.) The Commissioner responds that substantial evidence supports the ALJ's credibility findings in determining Claimant's residual functional capacity and the Appeals Council properly denied Claimant's request for review.

ANALYSIS

7

1. <u>The ALJ's Weighing of Reports of Medical Experts, Analysis of her Symptoms/Pain and Credibility and Determination of her Residual Functional Capacity.</u>

Evaluation of opinions of medical sources begins at the second level of the sequential analysis as the ALJ is considering whether a claimant has a severe impairment. At this level, Regulations provide a framework for crediting the opinions of medical sources. The Regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(d). That Regulation provides further that "[u]nless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion." In evaluating the opinions of treating physicians, the ALJ generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. <u>See</u> 20 C.F.R. § 404.1527(d)(2)(2000). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." <u>Ward v. Chater</u>, 924 F. Supp. 53, 55(W.D.Va. 1996); <u>see also</u>, 20 C.F.R. 404.1527(d)(2)(2000). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. § 404.1527(d)(2)(2000). Ultimately, it is the responsibility of the ALJ, not the Court, to review the case, make findings of fact, and resolve conflicts of evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the ALJ's conclusions are rational. <u>Oppenheimer v. Finch</u>, 495 F.2d 396,397 (4th Cir. 1994).

Social Security Ruling 96-2p, 1996 WL 374188 (S.S.A.), reiterates the standard for

considering medical opinions of treating sources stating when the ALJ must adopt the opinions of treating sources on the issue(s) of the nature and severity of claimants' impairments as follows:

> The [regulatory] provision recognizes the deference to which a treating source's medical opinion should be entitled. It does not permit us to substitute our own judgment for the opinion of a treating source on the issue(s) of the nature and severity of an impairment when the treating source has offered a medical opinion that is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.

According to SSR 96-2p, the medical opinions of treating sources must be given controlling weight when they meet four factors: (1) they must be opinions of "treating sources"; (2) they must be "medical opinions", i.e., opinions about the nature and severity of claimants' impairments; (3) the ALJ must find them "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques; and (4) even if well-supported, the opinions must be "not inconsistent" with the other "substantial evidence" in the individual's case record. SSR 96-2p states further as follows:

> It is not unusual for a single treating source to provide medical opinions about several issues; for example, at least one diagnosis, a prognosis, and an opinion about what the individual can still do. Although it is not necessary in every case to evaluate each treating source medical opinion separately, adjudicators must always be aware that one or more of the opinions may be controlling while others may not.

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 416.927(d)(2).

9

Generally speaking with respect to medical opinions, the ALJ gives more weight to opinions of treating physicians than to those of examining and non-examining physicians. 20 C.F.R. § 404.1527. As between the opinions of examining and non-examining physicians, the ALJ will generally give more weight to the opinion of examining physicians. 20 C.F.R. § 404.1527(d)(1). Opinions of medical experts are accorded the same treatment as that given non-examining sources. 20 C.F.R. § 1527(f)(2)(iii).

The ALJ must accompany his decision with sufficient explanation to allow a reviewing Court to determine whether the Commissioner's decision is supported by substantial evidence. "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a statement of the reasons for that decision." Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).

The United States Court of Appeals for the Fourth Circuit has stated that in Social Security cases, "[w]e cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to *all* of the relevant evidence." Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (emphasis added). Quoting its decision in a prior case, the Court stated as follows:

> The courts . . . face a difficult task in applying the substantial evidence test when the Secretary has not considered all relevant evidence.  Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'

Id. at 236 (quoting Arnold v. Secretary, 567 F.2d 258, 259 (4th Cir. 1977)). In Gordon, the claimant was examined by several doctors. See id. at 235. The Secretary, in determining that the claimant was capable of sedentary work, relied upon the testimony of a non-examining medical advisor, Dr. Bruce. See id. In remanding the case, the Fourth Circuit noted that neither the ALJ nor the Appeals Council indicated the weight attributed to the various medical reports submitted by the claimant, some of which supported Dr. Bruce's testimony and some of which did not. See id. at 235-36. Thus, the ALJ had not indicated the weight given to *all* of the evidence analyzed.

In Murphy v. Bowen, 810 F.2d 433 (4th Cir. 1987), the Fourth Circuit discussed the issue of an ALJ choosing between two sharply divided pieces of medical evidence. In Murphy, the Social Security claimant applied for disability on the basis of, among other things, "lack of education." Id. at 435. The claimant's medical record contained two conflicting psychological evaluations performed by clinical psychologists. See id. One psychologist, Dr. Andrews, found that claimant had a full-scale IQ of 71, suffered from only mild retardation, and had no psychological or personality disorders. See id. at 435-37. The other psychologist, Dr. Rudin, strongly disagreed with the findings of Dr. Andrews. See id. Dr. Rudin used different tests in evaluating the claimant, and criticized the tests used by Dr. Andrews as less reliable. See Murphy, 810 F.2d at 435. Dr. Rudin found that the claimant had a full-scale IQ of only 63, and found evidence of "psychotic tendencies, lack of contact with reality, and a strong suggestion of schizophrenia or schizoid personality disorder." Id. At the claimant's administrative hearing, a vocational expert testified that with an IQ score no lower than 71, there would be jobs claimant could perform, given his residual functional capacity, but with an IQ of 63, and some other added limitations, there would be no such jobs. See id. at 436. The ALJ found, based upon the evidence, that the claimant retained the residual functional capacity to return

to his past relevant work as a groundskeeper. See id. The Fourth Circuit found, on the available record, "little or no indication why the ALJ credited Dr. Andrews' views over those of Dr. Rudin." Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987). The Court held that "[i]n the face of such a sharp division in medical evidence, it is simply unacceptable for the ALJ to adopt one diagnosis over another without addressing the underlying conflict." Id.

At levels four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity (RFC) for substantial gainful activity, i.e., what the claimant can still do. At level four, the ALJ considers the claimant's symptoms, including pain. A two-step process is used to determine whether a claimant's symptoms, including pain, are disabling. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the symptoms/pain alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2002); SSR 96-7p; see also Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the symptoms/pain and the extent to which they affect a claimant's ability to work must be evaluated. Craig, 76 F.3d at 595. When a claimant proves the existence of a medical condition that could cause symptoms/pain, "the claimant's subjective complaints [of symptoms/pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of symptoms/pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§

12

404.1529(c)(4) and 416.929(c)(4) (2002).

"RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996).  Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2002). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (2002).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do.  That is, the SSA need not accept only physicians' opinions.  In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The record indicates that Dr. Carl Shelton began treating Claimant by referral in October, 1997, upon her complaint of tiredness and fatigue and neck, shoulder, arm, back and leg pain. (Tr. at 139 - 161, 245 - 250, 262 - 264.) Dr. Shelton testified at his October 3, 2003, deposition that thereafter he treated Claimant "off and on . . .. And more recently, I've seen her maybe three months. But there was a period where she was gone for two years." (Tr. at 275.) He found that she had

13

myofascial pain syndrome[3] among other things. (Tr. at 141, 248 - 250, 274.) As Dr. Shelton noted (Tr. at 148.), Claimant had a Functional Capacity Evaluation in June, 1998, and it was determined that Claimant had "the ability to perform sedentary-light work with 14 lbs. average, lifting on an occasional basis . . .." (Tr. at 148, 254 - 256.) It appears that Claimant initially had physical therapy and then had trigger point injections in August or September, 1998. In January, 1999, Claimant indicated as Dr. Shelton reported that "she feels 300% better. The injections have taken well and she has no significant problems with pain in her neck. The pain in the rest of her body is intermittent and for the most part manageable when it reappears." (Tr. at 143.) By Progress Note dated March 29, 2001, Dr. Shelton indicated his impression as "pain controlled well." (Tr. at 139.) Dr. Rodolpho Gobunsuy examined Claimant on July 24, 2002, and prepared a Disability Determination Evaluation. (Tr. at 207 - 212.) Dr. Gobunsuy found that Claimant had back pain and symptoms of fibromyalgia. (Tr. at 210.) DDS physician Dr. Rafael Gomez prepared a Physical Residual Functional Capacity Assessment on August 30, 2002, indicating that Claimant had the RFC to perform work at the light exertional level. (Tr. at 215 - 222.) Dr. Gomez found that Claimant could stand/walk and sit about 6 hour in an 8-hour day, had unlimited ability to push/pull, could occasionally climb, balance, stoop, kneel crouch and crawl and should avoid concentrated exposure

---

[3] Myofascial pain syndrome (MPS) is a chronic condition which affects the fascia, the connective tissue which covers the muscles. Its primary symptom is muscle pain with specific "trigger" or "tender" points. People having MPS also sometimes experience fatigue, depression and behavioral disturbances. It is treated by physical therapy, massage and trigger point injections. Fibromyalgia is a condition the cause of which has yet to be determined though there are many theories. It is characterized by aching and pain in the muscles, tendons and joints all over the body, especially along the spine. It too is indicated by specific "tender" points and is often accompanied by sleep disturbance, fatigue, depression, dizziness and memory problems. It is treated with medications which decrease pain and improve sleep, exercise and stress reduction and relaxation techniques.

to hazards including machinery and heights. (<u>Id.</u>) It appears that Claimant returned to Dr. Shelton for treatment in February, 2003, complaining of back, leg and arm pain and tingling in her extremities. (Tr. at 246.) Claimant was examined by Dr. Johnny Dy on April 14, 2003, at her attorney's request. (Tr. at 251 - 253.) Dr. Dy concluded that Claimant had multiple medical impairments including chronic low back strain with bilateral lumbar radiculopathy and chronic fibromyalgia and stated that "[w]ith the combination of her multiple medical impairments, I believe she has been totally disabled to resume her previous occupation. Her multiple impairments would limit her mainly to sedentary activities." (Tr. at 252.) Dr. Richard Starr testified as a medical expert at the administrative hearing on June 4, 2003, indicating generally his agreement with the diagnoses of record. (Tr. at 329.) Claimant testifies that she was not taking prescribed medications for pain or depression and took Extra Strength Excedrin at least once a day which "helps a little bit." (Tr. at 327 - 328.) Dr. Shelton was deposed on October 3, 2003. Dr. Shelton testified that Claimant's pain would significantly interfere with her ability to work on a sustained basis and would cause Claimant to miss one day out of five work days, Claimant could not perform any sustained work and Claimant has been continuously disabled from performing substantial gainful activity since October, 1997, when he first saw her. (Tr. at 277 - 278.) Notably, Dr. Shelton was not asked to assess Claimant's physical residual functional capacity, i.e., her ability to lift, stand/walk and sit and any postural or environmental limitations.

The ALJ relied upon Dr. Shelton's medical records at step two and step four of the sequential analysis in determining Claimant's severe impairments and RFC. He refers specifically to Dr. Shelton's Progress Notes indicating his finding that Claimant was experiencing chronic pain and the results of her 1998 residual functional evaluation. (Tr. at 20.) He obviously found that Claimant had

low back impairment and fibromyalgia, which he deemed severe, on the basis of objective medical evidence including Dr. Shelton's findings. In considering Claimant's credibility, the ALJ stated Claimant's subjective complaints and then discussed the clinical findings indicating the extent to which the clinical findings supported Claimant's subjective complaints. The ALJ concluded on the basis of this analysis that "[t]he claimant's allegations as to limitations and inability to work are not entirely credible." Having thoroughly examined the record, the Court finds the ALJ's recital of the evidence respecting Claimant's symptoms/pain and clinical findings accurate and his analysis consistent with applicable law and regulations. Claimant does not point to any glaring error in either respect, and the Court cannot find one. In considering Claimant's RFC, the ALJ gave "significant weight" to the results of Claimant's 1998 residual functional evaluation as mentioned by Dr. Shelton and the April 17, 2003, report and finding of Dr. Dy that Claimant was capable of sedentary work. (Tr. at 23.) The ALJ did not accept the RFC assessment of Dr. Gomez stating that "[g]iving the claimant the benefit of the doubt and considering the opinion from the examining doctor for sedentary work, as well as the functional capacity evaluation, the undersigned finds that she is limited to no more than sedentary work." (Id.) Thus, the ALJ concluded that "[t]he claimant retains the residual functional capacity to perform sedentary work with an unlimited sit/stand option. She can occasionally balance, stoop, kneel and crouch, but she can never climb ropes, ladders or scaffolding or crawl. She cannot have exposure to extreme cold, vibration or hazards such as machines or heights." (Tr. at 22.) The Court finds that the ALJ properly stated the weight he gave to the opinions of the medical sources as he had them and the ALJ's RFC analysis is in conformity with the law and regulations as stated above and supported by substantial evidence. The Claimant's contentions to the contrary are therefore without merit.

2. <u>Appeals Council's Consideration of Dr. Shelton's Deposition.</u>

Claimant submitted additional documents and medical records as her request for review was pending before the Appeals Council. (Tr. at 262 - 295.) They include Claimant's Motion for Remand (Tr. at 283 - 287.) And a copy of the March, April and July, 2003, notes of Dr. Shelton (Tr. at 262 - 264.), the August, 1997, report of Dr. Ranjan Roy (Tr. at 265 - 266.), the January 21 and June 2, 2003, notes of Dr. Othman (Tr. at 267), May 17, 2003, lab results (Tr. at 268.) and the transcript of Dr. Shelton's October 3, 2003, deposition (Tr. at 283 - 295.).

The record shows that this evidence was submitted to the Appeals Council and was made a part of the record that is currently before the Court. (Tr. at 7 - 10, 262 - 287.) The attached Order of the Appeals Council identifies the evidence as "hereby made a part of the record." (Tr. at 11.) The Appeals Council's January 2, 2004, decision concluded that there was no basis for granting Claimant's request for review of the ALJ decision. (Tr. at 7.) In the Appeals Council decision, the Appeals Officer stated as follows (Tr. at 8.):

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

Considering evidence which Claimant submitted to the Appeals Council and the Appeals Council included in the record, the Fourth Circuit concluded in <u>Wilkins v. Secretary, Dept. of Health and Human Serv.</u>, 953 F.2d 93, 96 (4th Cir. 1991)(*en banc*), that Courts reviewing decisions of the Social Security Administration must consider "the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." Thus, reviewing Courts must consider new evidence which the claimant submits while the decision of the Appeals Council is pending even when the Appeals Council denies the claimant's request for

review. *See also* Adkins v. Barnhart, 2003 WL 21105103, * 5 (S.D.W.Va.)(Stanley, M.J.).

In deciding whether to grant review, the Appeals Council "must consider evidence submitted with the request for review . . . 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" Wilkins, 953 F.2d at 95-96 (citations omitted). Evidence is "new" if it is not duplicative or cumulative. See id. at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id. Additionally, when the Appeals Council considers evidence, it must provide the reviewing Court with the basis for its decision to reject such evidence. See Toney v. Barnhart, Civil Action No. 5:02-0489, Order, Doc. No. 19 (S.D.W.Va. September 26, 2003) and Order, Doc. No. 26 (December 19, 2003)(Judge Chambers); Thomas v. Comm'r of Social Security, 24 Fed.Appx. 158, 161, 2001 WL 1602103, * 2 - 4 (4th Cir. 2001) (unpublished) (per curiam); Jordan v. Califano, 582 F.2d 1333, 1335 (4th Cir. 1978) ("A bald conclusion, unsupported by reasoning or evidence, is generally of no use to a reviewing court, except in the very rare instance when a case is so one-sided as to be obvious."); Hawker v. Barnhart, 235 F.Supp.2d 445, 450 (D. Md. 2002). "Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the Secretary's decision is supported by substantial evidence." Wilkins, 953 F.2d at 96.

The Regulations governing the circumstances under which the Appeals Council is to review an ALJ decision indicate that additional evidence will not be considered *unless* the evidence is new and material and relates to the period on or before the date of the ALJ decision. See 20 C.F.R. § 404.970(b) (2002), Hawker v. Barnhart, 235 F.Supp.2d at 445 - 46. For the Court to engage "in an examination of each of the records and then to determine whether they are credible and entitled to any weight would be to engage in the very task that this Court cannot do:  fact-finding." Hawker,

235 F.Supp.2d at 448 (citing DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983)("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator."). "Requiring the Appeals Council to explain its handling of evidence is neither a novel concept nor a burdensome obligation." Hawker, 235 F.Supp.2d 445, 450 (D. Md. 2002). In a recent unpublished *per curiam* decision, the Fourth Circuit reached the same conclusion on this issue. In Thomas v. Comm'r of Social Security, 24 Fed.Appx. 158, 2001 WL 1602103 (4th Cir. 2001), the Appeals Council, using nearly the same language as appears in the instant Appeals Council decision, denied the claimant's request for review after considering newly submitted evidence. Thomas, 24 Fed.Appx. at 160-61. Calling the Appeals Council's explanation "ambiguous," the Court remanded the case for further development of the record. Id. at 162-63.

The Court finds that the Appeals Council did not state specifically why it found that the evidence which Claimant submitted while her case was pending there did not provide a basis for changing the ALJ's decision, but it is clear that Dr. Shelton's opinions as stated in his deposition did not provide such a basis. Basically, Dr. Shelton testified that Claimant was disabled which is the ultimate issue in this case to be resolved by the Commissioner. As mentioned above, Dr. Shelton was not asked to assess Claimant's RFC, and the record stood in this regard before the Appeals Council as it did before the ALJ. While the law appears to require the Appeals Council to provide more of an explanation than it did in this case, the Court considers the Appeals Council's failure in this case to provide such an explanation harmless error. The Appeals Council's conclusion that Dr. Shelton's deposition testimony did not provide a basis for changing the ALJ's decision is obviously correct and supported by substantial evidence. Accordingly, the Court finds that Claimant's assertion that the Commissioner's decision must be reversed and remanded due to the failure of the Appeals

Council to explain how it viewed Dr. Shelton's deposition testimony must fail.

For the reasons stated above, The Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings is **DENIED**, Defendant's Motion for Judgment on the Pleadings is **GRANTED**, the Commissioner's decision is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a  copy of this Memorandum Opinion to counsel of record.

ENTER: September 15, 2005.

R. Clarke VanDervort
United States Magistrate Judge

20